# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Derek J. Fahnestock
302 351 9347
302 498 6238 Fax
dfahnestock@mnat.com

February 11, 2015 - Original Filing Date
February 18, 2015 - Redacted Filing Date

Special Master Allen M. Terrell, Jr.
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

*VIA ELECTRONIC FILING AND
ELECTRONIC MAIL*

REDACTED -
PUBLIC VERSION

Re:   *Merck Sharp & Dohme Corp. v. Xellia Pharmaceuticals ApS, et al*
      C.A. No. 14-199 (RGA)

Dear Special Master Terrell:

We, along with co-counsel Fitzpatrick, Cella, Harper & Scinto, represent Merck Sharp & Dohme Corp. ("Merck") in this action. Defendants Xellia Pharmaceuticals ApS and Xellia Pharmaceuticals, Inc. ("Xellia") seek to market a generic copy of Merck's Cancidas® product, an antifungal drug. Merck has alleged that the marketing of products under Xellia's Abbreviated New Drug Application ("ANDA"), if approved, would infringe U.S. Pat. No. 5,952,300 (the "'300 patent"). Xellia has stipulated that the '300 patent is valid and enforceable.

Further to your February 2, 2015 email, we write to address two discovery issues: (1) Xellia's improper withholding of numerous documents logged on its Second Amended Privilege Log that are not in fact privileged; and (2) Xellia's failure to provide testimony and/or adequately prepare a witness to testify regarding certain topics of Merck's Notice of Rule 30(b)(6) Deposition of Xellia (the "Deposition Notice"). Xellia's discovery failures are severely prejudicing Merck in preparing its infringement case, and Merck respectfully requests the relief requested below.

1. <u>Merck Has Raised These Discovery Issues In a Timely Manner</u>

This request is timely. As explained below, Merck raised these issues promptly after its extensive efforts to resolve the disputes without Court intervention were unsuccessful. Moreover, Merck raised these disputes prior to the January 30, 2015 close of fact discovery. Any alleged delay in raising these disputes within the fact discovery period was due to Xellia's conduct, and has prejudiced Merck, not Xellia. Thus, Xellia's assertion that Merck's request is untimely is wrong.

At the outset of this case, Xellia sought and obtained an expedited discovery schedule by representing to Judge Andrews that it was willing to provide expedited discovery. (*See* Ex. C1, Apr. 4, 2014 R. 16 Conf. Tr. at 5:17-7:21; 15:23-17:15; 21:17-22:12; 25:16-26:3.) Despite seeking a fast schedule, Xellia has blocked Merck's discovery efforts, prompting Merck to seek the appointment of a Special Master in December 2014.

After Xellia initially suggested that the parties *not* exchange privilege logs, Xellia eventually agreed to exchange logs on November 7, 2014. (*See* Ex. C10, Nov. 6, 2014 Email to Blake at 2.) However, Xellia's 983-entry log was utterly deficient, containing over 700 entries that failed to identify critical information such as author(s), recipient(s), date(s), and more fundamentally, any U.S. licensed attorney(s). (*See* Ex. B3, Nov. 7, 2014 Xellia's Original Privilege Log ("Original Log") Excerpts.) Merck promptly raised these deficiencies with Xellia on November 21, 2014. At about that time, Merck also requested a hearing to resolve various ongoing discovery disputes. (D.I. 48.)

On December 1, 2014, at midnight, three days before the scheduled discovery conference, Xellia produced to Merck an amended privilege log together with 70 documents. However, Xellia's amended log failed to address the majority of Merck's concerns. (*See* Ex. B2, Dec. 1. 2014 Xellia's First Amended Privilege Log ("First Amended Log").) Anticipating that the issues relating to Xellia's privilege log may not be resolved amicably, Merck asked that a Special Master be appointed, and the Court granted Merck's request. (*See* Ex. C4, Dec. 3, 2014 Merck's Ltr. to J. Andrews at 2; D.I. 65.) The parties met and conferred on the privilege dispute immediately after the December 5, 2014 discovery conference, and again after the December 18, 2014 claim construction hearing. Xellia informed Merck that it would produce "approximately 800" documents subject to a "non-waiver" agreement. (*See* Ex. C5, Dec. 16, 2014 Email to Leonard.)

After the parties worked out the terms of the non-waiver agreement, Xellia produced about 700 documents from its log on December 31, 2014 and January 2, 2015, giving Merck little time to review the more than 14,000 page production before the depositions of Xellia's witnesses scheduled to begin on January 14, 2015. Merck's review of Xellia's supposedly privileged documents revealed, as Merck suspected, that Xellia had been improperly withholding numerous relevant, discoverable documents. Among these belated productions were ▌ ▌ Xellia continues to withhold from Merck, despite Merck's discovery efforts. (▌ ▌ and were produced as part of the over 14,000 page production on December 31, 2014 and January 2, 2015, almost ***four months after the deadline for substantial completion of document production, several weeks after the claim construction hearing, and less than two weeks before the scheduled deposition****s*. (*See* Ex. E.)

On December 31, 2014, Xellia produced to Merck yet another amended privilege log, now listing 194 entries. (*See* Ex. B1, Dec. 31, 2014 Xellia's Second Amended Privilege Log ("Second Amended Log").) Xellia allegedly deleted from its log all entries for documents it claims have been produced to Merck or removed for lack of relevance. (*See* Ex. C6, Dec. 31, 2014 Email to Slater.) However, Merck has been unable to match up all the documents produced with the removed privilege log entries and requested that Xellia provide a table—organized by entry number from Xellia's Original Log—showing the Bates range for each document produced

pursuant to the non-waiver agreement. (*See* Ex. C7, Jan. 9, 2015, Ltr. to Blake at 1-2.) While Xellia argues that it can account for all the documents, it has never produced the requested table, and Merck has been unable to confirm whether the documents Xellia removed from its log have in fact been produced. (*See* Ex. C9, Jan. 18, 2015, Ltr. to Leonard at 2.)

Of the remaining 194 entries on Xellia's privilege log, at least 100 remain deficient for the reasons discussed below. Merck discussed these issues with Xellia at yet another meet-and-confer on January 20, 2015, but no agreement could be reached. Accordingly, Merck raised these issues in a timely manner. Any alleged delay in doing so is attributed to Xellia's conduct. Having delayed the process for months, it is remarkable that Xellia now claims that Merck's application is somehow untimely.

2. Xellia Continues to Withhold Relevant Documents Under Improper Claims of Privilege

Xellia asserts that the 194 documents listed on its Second Amended Log are entitled to one or more of the following protections: (1) attorney client privilege, (2) work product immunity, and/or (3) common interest or joint defense privilege. For the reasons discussed below, and as summarized in Exhibit A, the majority of the listed documents are not privileged and Xellia should be ordered to produce them.

A. Improper Withholding of Foreign Patent Agent/Attorney Communications

Communications with foreign patent agents or attorneys that "touch base" with the United States are controlled by United States privilege law. *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, No. 08-874, 2010 WL 9546391, at *2 (D. Del. Jun. 17, 2010); *Tulip Computers Int'l v. Dell Computer Co.*, 210 F.R.D. 100, 104 (D. Del. 2002). "To qualify for protection under the 'touch base' test, the primary consideration is the country 'with the most significant relationship with the communications.'" *Inventio*, 2010 WL 9546391, at *2. In order for communications that "touch base" with the U.S to be privileged, the communications must involve the receipt of legal advice from, or a request for legal advice to, a **U.S. licensed attorney**. See *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1446 (D. Del. 1989). Communications with foreign patent agents that touch base with the U.S. are privileged if the foreign patent agents are acting under the direction of a U.S. licensed attorney. *Id.* Moreover, "to the extent that [a foreign attorney] communicated with others . . . without outside counsel being party to the communication, there was greater opportunity to find that . . . [communication] was for business rather than legal reasons." *Robocast, Inc. v. Apple, Inc.*, No. 11-235-RGA *et seq.*, 2013 WL 5979768, at *2 (D. Del. Jul. 30, 2013). Ultimately, the burden of justifying the refusal to produce documents on the basis of privilege falls on the party asserting the privilege. *Tulip Computers Int'l*, 210 F.R.D. at 104.

As detailed in Exhibit A, most of the entries on Xellia's Second Amended Log do not list any U.S. licensed attorney but rather list only foreign patent agents or attorneys, [REDACTED] see, e.g., Nos. 112, 173, 178, 791.) The majority of these entries indisputably touch base with the United States, since they involve U.S. subject matters, such as the "'300 patent" (*i.e.*, the U.S. patent-in-suit), "caspofungin legal strategy in

US" or "caspofungin [United States] ANDA". (*See, e.g.,* Nos. 36, 281, 386, 387, 548, 569.) Other entries on Xellia's log are vague (*e.g.,* they refer to "caspofungin", "caspofungin products", an unidentified "patent application" or "caspofungin patents") but may very well also touch base with the United States. (*See, e.g.,* Nos. 9, 38, 173.) An *in camera* review could be conducted to verify if these remaining communications "touch base" with the United States. Accordingly, all of these communications that "touch base" with the United States are being improperly withheld and should be produced.

Xellia now argues these documents are privileged either because (1) Danish law *may* apply or (2) "Xellia's development of its caspofungin product was done under consultation with U.S. counsel from the very beginning of the project." (*See* Ex. C9, at 2-3.) Neither argument has merit. As to Xellia's first argument, Danish law would be inapplicable to documents that clearly "touch base" with the U.S., such as those related the '300 patent, Xellia's ANDA products, and litigation involving the '300 patent. *See Inventio AG,* 2010 WL 9546391, at *2. Xellia's second argument is belied by Xellia's privilege log. Despite twice amending its privilege log, the disputed documents are still described as involving only foreign patent agents or attorneys. Even if Xellia's unsupported assertion on the involvement of U.S. counsel from the "beginning of the project" were correct – and it has supplied no evidence to support that allegation – it still would not support the withholding of the particular communications in dispute here, where the descriptions do not identify a U.S. attorney as being involved in the particular communication or directing the foreign attorney/agent at that time. Accordingly, these documents should be produced.

In addition, Xellia asserts work product protection for many of the foreign patent agent/attorney communications. (*See, e.g.,* Nos. 36, 176, 178, 282.) In order to qualify for such protection, Xellia bears the burden of showing that the withheld documents were prepared by or at the direction of U.S. counsel in preparation for trial or in anticipation of litigation. *See, e.g, Inventio AG,* 2010 WL 9546391, at *3; *see also Pfizer, Inc. v. Lupin Pharm., Inc.,* 2013 WL 6247357, at *2 (D. Del. Dec. 2, 2013) (work product protection applies to documents prepared "at a time when litigation was reasonably foreseeable" and "primarily for the purpose of litigation[,]" not in the ordinary course of business). The disputed entries do not, however, identify *any* U.S. licensed attorney involvement, and Xellia has made no showing that the documents were prepared by or at the direction of a U.S. licensed attorney in anticipation of this litigation. Thus, Xellia's unsubstantiated assertions do not justify the withholding of these foreign agent/attorney communications under the guise of work product.

B. Improper Withholding Of Documents Where No Attorney Is Identified

Xellia's Second Amended Log contains numerous entries that fail to specifically identify a U.S. licensed attorney. For example, several of the entries simply say "attorney" but provide no name. (*See, e.g.,* Nos. 256-58, 260, 266-71.) Other entries merely list "Xellia Legal Department" (*e.g.,* No. 142), "Merchant & Gould" (*e.g.,* No. 180), "Outside counsel for Xellia" (*e.g.,* No. 671), or "Caspofungin Project Group" (*e.g.,* No. 791.), but fail to name the specific attorney(s) allegedly involved. Xellia has declined to provide the names of the U.S. licensed attorney(s), if any, that are the subject of these entries. Accordingly, Xellia has not supported the withholding of documents in this category.

### C. Improper Assertion of Work Product Protection For Undated Documents

In addition to improperly claiming work product protection for documents involving foreign agents/attorneys that do not identify any U.S. licensed attorney involvement, Xellia improperly continues to claim work product protection for **undated** documents. (*See, e.g.*, Nos. 876-78, 880, 893-94, 900.) In its Original Log, Xellia asserted work-product immunity for documents dating as far back as the 1990s. After Merck challenged this assertion (*see* Ex. C2, Nov. 21, 2014 Ltr. to Blake at 1), Xellia backtracked and conceded that work-product immunity only applied to documents dated after August 23, 2012, the date Xellia alleges it circulated a document retention memorandum. (*See* Ex. C3, Dec. 1, 2014, Ltr. to Leonard at 1; *see also*, Ex. B2, at Entry No. 315.) Further, Xellia's descriptions fail to assure that the documents were specifically created in anticipation of litigation. Merely stating that the undated documents "reflect advice of outside counsel" or were "prepared in anticipation of litigation," without more, is not sufficient. Thus, Xellia has no basis to claim work product protection for **undated** documents.

### D. Improper Assertion of Joint Defense Privilege and/or Common Interest Privilege

In its Second Amended Log, Xellia lists 14 documents allegedly entitled to a joint defense privilege and/or common interest privilege. (*See, e.g.*, Nos. 112, 137-38, 282-85.) For the common interest or joint defense privilege to apply, Xellia must satisfy the following requirements: (i) the communication must be between attorneys; (ii) all members of the community must share a common legal interest in the communication; and (iii) the parties at issue must be represented by separate counsel. *See In re Teleglobe Communications Corp.*, 493 F.3d 345, 364–65 (3d Cir. 2007). For common interest protection to arise, there must be an underlying privilege. *See id.* at 359 (explaining that the common interest doctrine "comes into play when clients with separate attorneys share ***otherwise privileged information*** in order to coordinate their legal activities") (emphasis added). Here, however, Xellia simply lists the reason for withholding as "subject to joint defense privilege," "subject to common interest privilege," "Joint Defense," or "Common Interest," but fails to describe any underlying privilege, and therefore has not supported withholding of the documents. Further, Xellia fails to identify any party with whom Xellia is allegedly claiming these "common interest" privileges, far less that the other party is represented by separate U.S. counsel. Moreover, Xellia has failed to meet its burden of showing that it is entitled to common interest protection because the disputed communications do not appear to be between counsel. *In re Teleglobe*, 493 F.3d at 359. During the January 20, 2015 meet-and-confer, Xellia said it would look into this issue and provide a response, but it never did so. Xellia should be ordered to produce these documents as well.

### E. Relief Requested

For the above-stated reasons, Merck requests that the Special Master order Xellia to: (1) produce all improperly withheld documents on Xellia's privilege log; (2) re-produce witnesses to be deposed as to documents Xellia improperly withheld and related subjects; (3) provide to Merck a log identifying by entry on Xellia's Original Log the Bates Numbers of the documents allegedly produced to Merck.

Special Master Allen M. Terrell, Jr.
February 11, 2015
Page 6

3. <u>Xellia's Refusal To Provide Rule 30(b)(6) Deposition Testimony on Properly Noticed Topics Has Severely Prejudiced Merck</u>

A. <u>Merck's Request For Additional/Supplemental Testimony Is Also Timely</u>

Merck's request for additional testimony is also timely and is based largely upon Xellia's continued refusal to provide discovery. Merck noticed its Rule 30(b)(6) deposition of Xellia on seventeen topics on November 25, 2014. (*See* Ex. D1, the Deposition Notice.) In response, Xellia suggested that it "[did] not intend" to provide any testimony on Topic 4 (Xellia's decision to file a paragraph IV certification), and only clarified this objection a week before the deposition by refusing to name a witness. (*See* Ex. D2, Excerpts of Xellia's Objections and Responses to Merck's Deposition Notice dated Dec. 23, 2014 at p. 6; *see also* Ex. C8, Jan. 7, 2015 Email to Leonard). Xellia then designated two Rule 30(b)(6) witnesses including Anita Bevetek Mocnik for the remaining sixteen topics. Xellia failed to adequately prepare Ms. Mocnik for the deposition and thus prevented Merck from being able to obtain highly probative testimony on matters known to Xellia. Merck raised its objections to Xellia's inadequate preparation of Ms. Mocnik during the Rule 30(b)(6) deposition on January 14, 2015 and at the January 20, 2015 meet-and-confer. Xellia, however, continues to refuse to provide any testimony on Topic 4 and has refused to provide supplemental testimony on Topics 13 and 16. Merck raised these issues with the Special Master prior to the January 30, 2015 close of fact discovery. Accordingly, Merck has raised these issues in a timely manner.

B. <u>Xellia's Refusal to Provide Any Rule 30(b)(6) Testimony on Topic 4</u>

Topic 4 of Merck's Deposition Notice seeks Rule 30(b)(6) testimony on Xellia's decision to file a paragraph IV certification with respect to the '300 patent, all information used or considered in making that decision, and the identities of all individuals involved in making that decision. Topic 4 thus calls for information that is properly discoverable, central to the case, and reasonably available to Xellia. This topic is relevant at least to Xellia's affirmative defense of non-infringement. (*See, e.g.*, D.I. 44.) This topic is also relevant to Merck's allegation that this case is exceptional under 35 U.S.C. § 285, and Xellia cannot limit discovery on this topic. *See Yamanouchi Pharmaceutical Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000). Thus, Merck is entitled to discovery of the underlying factual bases for Xellia's decision to file a paragraph IV certification. Merck is not seeking information on the mental impressions, conclusions, opinions, or legal theories of Xellia's attorneys (because Xellia has elected not to waive privilege) but rather is seeking relevant, non-privileged facts known or reasonably available to Xellia, as to which Merck is entitled to discovery under the Federal Rules. Xellia improperly refused to designate any witness for this topic, thereby depriving Merck of the ability to obtain highly probative testimony on matters within Xellia's knowledge as a result. (*See* Ex. D2, at p. 6; *see also*, Ex. C8, Jan. 12, 2015 Email to Blake.) Accordingly, Merck requests the Special Master to compel Xellia to designate and produce a fully prepared and competent witness(es) to provide testimony on Topic 4.

C. <u>Xellia's Failure to Provide Competent Testimony on Topics 13 and 16</u>

Topics 13 and 16 of Merck's Deposition Notice relate to Xellia's attempts to design around the claims of the '300 patent and research, analyses, or investigations of the '300 patent. (*See* Ex. D1.) Xellia's attempts to design around the '300 patent and its investigations of the

'300 patent are relevant at least to Xellia's non-infringement defense and whether or not Xellia had a good faith factual basis to allege non-infringement. Thus, Merck is entitled to discovery of Xellia's understanding of the '300 patent under the Federal Rules. Although Xellia agreed to provide Rule 30(b)(6) testimony regarding these topics (*see* Ex. D2, at pp. 11-14), for the reasons discussed below, Xellia failed to meet its obligations under Rule 30(b)(6).

A corporation has a duty to provide a prepared witness to testify in response to a Rule 30(b)(6) notice. *See Penn. Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Trust*, No. 09-663, 2011 WL 1636985, at *1 (D. Del. Apr. 29, 2011); *see also* Moore's Federal Practice § 30.25. "The corporation must prepare its designee to be able to give binding answers on its behalf ... [and] perform a reasonable inquiry for information that is noticed and reasonably available to it." *See Oy v. Verizon Services Corp.*, No. 12-715, 2013 WL 5675516, at *2 (D. Del. Oct. 15, 2013) (internal quotations and citations omitted). Thus, a Rule 30(b)(6) witness has an "affirmative obligation to educate himself as to the matters regarding the corporation." *See In re Neurontin Antitrust Litig.*, MDL No. 1478, 2011 WL 2357793, at *5 (D.N.J. Jun. 9, 2011) (internal quotations and citations omitted). If a Rule 30(b)(6) witness is asked a question concerning a subject that was noticed with particularity, is seeking information that is reasonably available to the corporation, and is not unreasonably obscure, and the witness is unprepared to answer the question, the purpose of the deposition is completely undermined. *See State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008) (internal citation omitted). When a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "producing an unprepared witness is tantamount to a failure to appear" that is sanctionable under Rule 37(d). *See In re Neurontin Antitrust Litig*, 2011 WL 2357793, at *4; *see also State Farm*, 250 F.R.D. at 217 (*citing Black Horse Lane Assoc., L.P. v. Dow. Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000)).

Xellia designated Ms. Mocnik as a corporate witness for twelve topics, including Topics 13 and 16. However, Ms. Mocnik's Rule 30(b)(6) testimony did not satisfy Xellia's obligation to provide competent testimony on Topics 13 and 16. In key respects, Ms. Mocnik's testimony was tantamount to no testimony at all. First, Ms. Mocnik's limited answers prevented Merck from discovering the scope of ***Xellia's*** knowledge about these topics.



Thus, Ms. Mocnik's deposition testimony on Topics 13 and 16, taken

as a whole, demonstrates that she was an inadequate Rule 30(b)(6) witness and "reflects an overall lack of knowledge as to the core areas of inquiry." *See Oy v. Verizon Services Corp.*, 2013 WL 5675516, at *2.

Second, Xellia failed to adequately prepare its designated witness.  Thus, Xellia's preparation of its Rule 30(b)(6) witness on these topics was clearly inadequate.

Finally, Xellia's production of an unprepared witness completely undermined Merck's deposition and deprived Merck of the ability to obtain highly probative testimony on matters within Xellia's knowledge. *See State Farm*, 250 F.R.D. at 216. Merck's questions to Ms. Mocnik were clearly directed to the properly noticed topics, were not unreasonably obscure, and sought relevant, non-privileged information that was reasonably available to Xellia. And Xellia's Rule 30(b)(6) witness was unprepared to answer Merck's questions on the properly noticed topics. Because Ms. Mocnik repeatedly failed to provide substantive answers to even the most basic factual questions on Topics 13 and 16, Merck was unable to ask further questions seeking more detailed answers. Accordingly, Merck requests that the Special Master order Xellia to provide supplemental Rule 30(b)(6) testimony on the foregoing topics.

D. Relief Requested

Accordingly, Merck respectfully requests that the Special Master order Xellia to (1) produce a fully prepared witness or witnesses to testify on Topic 4 of Merck's Deposition Notice, and (2) supplement Xellia's inadequate testimony on Topics 13 and 16 of the Notice.

Respectfully,

/s/ *Derek J. Fahnestock*

Derek J. Fahnestock (#4705)

DJF/bac
Enclosures
cc: Clerk of Court (via hand delivery; w/enclosures)
All Counsel of Record (via electronic mail; w/enclosures)